Filed 11/26/13  P. v. Aparicio CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ADOLFO APARICIO,<br><br>    Defendant and Appellant. | G047477<br><br>(Super. Ct. No. 09CF2722)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Frank F. Fasel, Judge.  (Retired Judge of the Orange Sup. Ct. assigned by the Chief Justice pursuant to art. IV, § 6 of the Cal. Const.)  Affirmed as modified.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

Adolfo Aparicio appeals from an order after a probation revocation hearing where the trial court found he violated the conditions of his probation. Aparicio contends the following: (1) the trial court erred in admitting into evidence a tape recording of 911 calls because they were not authenticated; (2) the court abused its discretion when it revoked his probation for failing to submit to search and seizure; and (3) the abstract of judgment incorrectly reflects his pre-sentence credits and should be corrected. Although we agree Aparicio is entitled to additional credits, his other contentions are meritless. We affirm the order revoking probation and modify the judgment.

FACTS

*Underlying Conviction*

In October 2009, a domestic dispute between Aparicio and his then wife, Isaura Meza, occurred at an apartment complex in Santa Ana. The dispute became violent when Aparicio began to hit and kick Meza. Aparicio left the apartment complex, but he returned a few hours later and threatened to kill someone if he was not allowed inside an apartment; he was not let in. After briefly leaving to pick up her niece and son, Meza returned to the apartment complex. Aparicio had been waiting for her outside. When he saw Meza, he pulled out a semiautomatic gun and fired it in her direction.

In April 2010, an information charged Aparicio with the following seven counts: attempted murder (Pen. Code, §§ 187, subd. (a), 664, subd. (a));[1] assault with a semiautomatic firearm (§ 245, subd. (b)); domestic battery with corporal injury (§ 273.5, subd. (a)); aggravated assault (§ 245, subd. (a)(1)); criminal threats (§ 422); possession of a firearm by felon (§ 12021, subd. (a)(1)); and street terrorism (§ 186.22, subd. (a)). The information alleged Aparicio personally used and discharged a firearm in committing the attempted murder offense (§ 12022.53, subd. (c)), and personally used a firearm in committing the assault with a deadly weapon offense (§ 12022.5, subd. (a)). The

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

2

information also alleged he had a prior felony conviction that qualified as a serious felony and a strike (§§ 667, subds. (a)(1), (d), (e)(1), 1170.12, subds. (b), (c)(1)), and he had served two prior prison terms (§ 667.5, subd. (b)).

In August 2010, Aparicio pleaded guilty to attempted murder and admitted the prior serious felony conviction and prison priors. (§ 667, subd. (a)(1).) Under the terms of the plea agreement, the trial court sentenced Aparicio to 16 years in prison, but the court suspended execution of the sentence provided Aparicio serve one year in county jail and three years of supervised probation. As relevant here, the court imposed the following probation conditions on Aparicio: (1) "Violate no law"; (2) "Submit . . . to search and seizure at any time of the day or night by any law enforcement or probation officer, with or without a warrant, probable cause, or reasonable suspicion"; and (3) "Attend and [c]omplete the Domestic Violence Batterer's Treatment Program." Aparicio's probation began on January 14, 2011.

*Probation Violations*

In December 2011, Michelle Diaz was six months pregnant with Aparicio's child, and the couple lived together. On New Year's Eve 2011, Aparicio and Diaz attended a party at Diaz's sister Claudia Aguera's house, at 2041 South Oak Street in Santa Ana. Many family members attended the party, and everyone was drinking alcohol except for Diaz. Well into the party, Diaz became upset because she believed Aparicio was "checking out" another woman. The couple began to argue, and Diaz slapped and pushed Aparicio. The argument intensified, eventually causing Aguera to call the police three times.

Aguera's first call to 911 occurred at 2:14 a.m. She asked for police assistance because "[her] brother-in-law's hitting [Diaz] and she's pregnant. He's kicking her and punching her in the face." Aguera identified the perpetrator as "Alberto," and went on to describe him as wearing a black shirt and khaki pants. When Officer Brandon Sontag arrived at the house, he found a chaotic scene, but he could not locate

3

Aparicio. Sontag first spoke with Aguera believing she was Diaz. He eventually contacted Diaz, who was crying and "uncooperative." When he asked Diaz what happened, she said, "'I don't want to tell you. He will fucking kill me.'" Eventually, Diaz identified Aparicio as her boyfriend and stated he punched and kicked her, and he pulled her hair.[2] Diaz did not have visible injuries, and she declined medical attention. Diaz then refused to talk to Sontag and said, "'I'm not telling you anything. I don't want to press charges and you can't make me.'" Sontag left after family members denied his request to search the house for Aparicio.

A few minutes after Sontag's departure, Aguera made a second call to 911. She informed the dispatcher that Aparicio had returned and was trying to enter the house and they were scared because he tried to kill his ex-wife and he is a gang member. Upon arrival, Sontag was again unable to locate Aparicio, so he left but parked nearby because he thought Aparicio would return.

About 25 minutes later, Aguera called 911 a third time. When Sontag, who was wearing his department issued uniform, arrived several family members pointed out Aparicio, who was standing on the front porch. As we explain anon, there were different accounts of what happened next. But it is not disputed Sontag apprehended Aparicio and arrested him.

*Probation Revocation Hearing*

The Orange County Probation Department filed a petition for arraignment for a probation violation. The petition alleged Aparicio violated his probation by

---

[2] At the probation revocation hearing, Diaz denied she spoke with any police officers.

4

committing battery against a spouse or cohabitant (§ 243, subd. (e)(1)), and failing to submit to search and seizure.[3]

At the probation revocation hearing, Aparicio's defense attorney objected to admission of a tape recording containing the 911 calls between Aguera and the police dispatcher because they lacked proper foundation and authentication and on due process grounds. The prosecutor replied Diaz had recanted her statements and Aguera's statements are excited utterances. The court overruled the objection without prejudice subject to a motion to strike. After the court admitted the tape into evidence and heard it in full, defense counsel moved to strike the tape. The court denied the motion, explaining there is no Sixth Amendment right to confront and cross-examine at a probation revocation hearing and "at this point in time for clarification purposes [the tape] is admitted within the meaning of [Evidence Code section] 1240 as a spontaneous declaration." Neither party called Aguera to testify at the hearing.

Sontag testified that when family members indicated Aparicio was on the front porch, Sontag walked towards him. Sontag stated Aparicio was "maybe 20 feet, 30 feet" away. Sontag said he called out Aparicio's name and tried to get him to stop and talk three or four times; Aparicio made eye contact with him after the second or third time Sontag stated his name. Sontag stated he followed Aparicio as he walked towards the driveway, and after Aparicio turned the corner of the house and walked up the driveway towards the backyard, Sontag caught up with him and was a few "feet from [him]." Sontag ordered Aparicio to walk towards him, but he turned away as if he was going to walk to the backyard. Sontag testified, "[He] used [his] left hand in a slapping motion to strike [Aparicio][]" on the "right cheek ear area." Sontag said Aparicio fell to the ground and he handcuffed him. On cross-examination, Sontag admitted he had

---

[3]     The declaration alleged a third violation of the probation condition, that Aparicio attend and complete the Domestic Violence Batterer's Treatment Program. But the trial court found he did not violate this condition.

5

several complaints of excessive force filed against him. Sontag also admitted he was a defendant in several civil actions arising out of his employment; two cases resulted in substantial settlement agreements with the city.

Aparicio's probation officer testified she spoke with Diaz weeks after the incident. Diaz did not tell her Aparicio hit or kicked her, but she did say he pulled her hair.

As noted above, Diaz denied speaking with officers or making any statement implicating Aparicio. After the 911 tape was played for the trial court, Diaz confirmed the voice on the tape was her sister's (Aguera's) voice. On cross-examination, Diaz, who was inside the house, testified she did not hear Sontag say anything to Aparicio. She claimed, "I just seen [*sic*] [Sontag] slam [Aparicio] to the floor." The record reflects Diaz claimed Sontag body slammed Aparicio, and another officer sat on his feet.

At the close of the prosecutor's case-in-chief, the prosecutor moved to admit the 911 tape (and the transcript the prosecutor agreed he would produce after the hearing), into evidence. Aparicio's defense attorney again objected. The court admitted the 911 tape into evidence, explaining the 911 tape was "a spontaneous declaration within the meaning of [Evidence Code section] 1240 . . . ." The court added some of the statements Diaz made to Sontag were consistent with Aguera's statements on the tape. The court concluded there was no need for Aguera to testify at the hearing.

Aparicio's nephew and a family friend, Angelica Reyes, both testified they did not see Aparicio hit or kick Diaz. Reyes testified she heard Sontag instruct Aparicio to "open the gate and walk towards [him]." Reyes also testified she heard Sontag call Aparicio a "mother fucker" and saw him punch Aparicio on the right side of the face and when he fell to the floor, Sontag handcuffed him "roughly."

Aparicio testified he did not use physical force of any kind against Diaz. Aparicio stated he did not see the police officers, but he heard someone running and he

6

stepped inside the gate and stood near the house. He said he heard someone cursing at him, and when he began to look over his left shoulder, someone hit him on the right side of the face and he fell to the ground. He never heard the police identify themselves, tell him stop, or call his name. On cross-examination, Aparicio admitted he was previously convicted of felony evading a police officer.

After hearing the evidence and counsels' arguments, the trial court found Aparicio violated his probation because he committed a battery against Diaz and failed to submit to a search and seizure based on a preponderance of the evidence. The court reasoned the current offense was similar to his previous conviction for shooting at his former wife because they both involved domestic violence. The court explained that although Sontag may have some credibility issues, the issue of whether he used excessive force was not at issue. Based on Aguera's 911 calls and Diaz's statements to Sontag at the scene, the court concluded Aparicio committed a battery against Diaz. The court opined this was supported by the probation officer's testimony Diaz told her Aparicio pulled her hair. The court did not believe Aparicio's and Diaz's testimony concerning the incident.

The trial court revoked the suspension of the previously executed sentence and imposed the identical sentence. The court sentenced Aparicio to 16 years in prison as follows: the upper term of nine years, five years for the prior serious felony conviction, and two years on the two prison priors. The court stated Aparicio was entitled to 365 days credit on his prior sentence. The court said Aparicio had 259 days of actual credit and 39 days of conduct credit for a total of 298 days. The court awarded Aparicio a total of 663 days credit. Aparicio's defense attorney indicated he calculated Aparicio had 260 days of actual credit. The court agreed and changed its calculation stating Aparicio was entitled to 365 days credit on his prior sentence. The court said Aparicio had 260 days of actual credit and 49 days of conduct credit for a total of 309 days. The court awarded Aparicio a total of 674 days credit. The abstract of judgment reflects the

7

court awarded him 365 days of actual credit and 309 days of conduct credit for a total of 674 days.

## DISCUSSION

Under section 1203.2, subdivision (a), "the court may revoke and terminate [probation] if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the [probationer] has violated any of the conditions . . . or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses." Although the evidence must show a willful violation occurred (*People v. Zaring* (1992) 8 Cal.App.4th 362, 379 (*Zaring*)), our Supreme Court has found a trial court's "reason to believe" a probationer violated a probation condition is provable by a preponderance of the evidence (*People v. Rodriguez* (1990) 51 Cal.3d 437, 440-443). Because probation revocation hearings are not part of a criminal prosecution, "'[m]ore lenient rules of evidence apply than at criminal trials [citation] . . . .'" (*People v. McGavock* (1999) 69 Cal.App.4th 332, 337 (*McGavock*); see *Morrissey v. Brewer* (1972) 408 U.S. 471, 480 ["the full panoply of rights due a defendant in [a criminal] proceeding does not apply [to probation revocation proceedings"].)

*911 Tape*

Aparicio contends the trial court erred by admitting into evidence the tape recording of Aguera's 911 calls because the prosecution failed to lay a proper foundation to authenticate the tape.[4] We disagree.

An audio recording must be authenticated to be admissible into evidence. (*People v. Gonzalez* (2006) 38 Cal.4th 932, 952; Evid. Code, § 250 [audio recording is same as a writing].) For foundation purposes, a participant to a recording's content may

---

[4] On appeal, Aparicio does not argue admission of the 911 tape violated his due process rights.

8

authenticate the recording by testifying to whether it is an accurate reflection of the oral content. (Evid. Code, § 1413.) However, "'[t]he decision whether the foundational evidence is sufficiently substantial is a matter within the [trial] court's discretion.'" (*People v. Bacon* (2010) 50 Cal.4th 1082, 1103.) "Circumstantial evidence, content, and location are all valid means of authentication. [Citations.]" (*People v. Gibson* (2001) 90 Cal.App.4th 371, 383; see also, Evid. Code, § 1410 ["[n]othing in this article shall be construed to limit the means by which a writing may be authenticated or proved"].)

Here, although neither Aguera nor the 911 operator testified, the record includes circumstantial evidence from which the trial court could reasonably conclude the 911 tape was authentic. There was witness testimony that meaningfully correlated with Aguera's statements in the 911 telephone calls, including the following: Aguera stated the incident occurred at 2041 South Oak Street in Santa Ana, and Sontag testified he responded to the same address; Aguera stated Aparicio wore a black shirt and khaki pants, and Aparicio admitted that was what he wore; Aguera stated Aparicio was intoxicated, and Aparicio testified he had been drinking that night; and Aguera stated Aparicio had been convicted for trying to kill his ex-wife, and Aparicio admitted that conduct. In addition, Diaz testified she recognized Aguera's voice on the recording of the 911 telephone calls.

Aparicio complains the trial court failed to rule on defense counsel's foundational objection to the admission of the 911 recording. Nonsense. The court indicated it considered the need for Aguera to testify to corroborate the 911 tape but concluded Sontag's testimony concerning Diaz's statements was consistent with Aguera's statements to the 911 operator. The court considered and ruled on Aparicio's foundational objection. Thus, there was circumstantial evidence from which the court could reasonably conclude the 911 tape was sufficiently reliable to demonstrate the recording accurately depicted its content. (*People v. Williams* (1997) 16 Cal.4th 635, 662

9

[audio recording authenticated by evidence it accurately depicts what it purports to show].)

Assuming the trial court erred in admitting into evidence the 911 tape, it is not reasonably probable the result of the proceeding would have been different had the court excluded the 911 tape from evidence. (*People v. Catlin* (2001) 26 Cal.4th 81, 138 [applying standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, to claim trial court erred in admitting evidence].) In making its ruling, the court opined Sontag's testimony stating Diaz confessed to him that Aparicio hit and kicked her was believable. The court also found testimony by Aparico's probation officer was reliable regarding Diaz's statement that Aparicio pulled her hair the night of the incident. Citing this evidence, the court concluded Aparicio acted violently toward Diaz that evening. Thus, it is not reasonably probable the result of the proceeding would have been different had the court excluded from evidence the 911 tape.

Aparicio relies on *O'Laskey v. Sortino* (1990) 224 Cal.App.3d 241 (*O'Laskey*),[5] to argue the 911 tapes were not properly authenticated. *O'Laskey* is inapposite. In that case, a private investigator had surreptitiously recorded a conversation between himself and defendant. (*Id.* at p. 244.) Plaintiff sought to authenticate a *transcript* of the recording with a declaration from his attorney stating among other things that the voice on the tape was defendant's voice. (*Id.* at p. 249.) The *O'Laskey* court explained there was no evidence the tape was what plaintiff claimed it to be because "[n]o declaration or other sworn testimony of the investigator was offered to describe when, where, how or by whom the tape was made." (*Ibid.*) The court of appeal added, "Furthermore, [plaintiff] failed to introduce any evidence regarding the completeness or accuracy of the tape." (*Id.* at p. 250.) As we explain above, although

_____

5         *O'Laskey* was disapproved on other grounds in *Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 768, 774-776 & footnote 4.

10

neither Aguera nor the 911 operator testified concerning the authenticity of the tape, the prosecutor did present circumstantial evidence, Sontag's testimony, that the 911 tape was what it purported to be. Therefore, we conclude the court properly admitted the 911 tape into evidence.

*Search and Seizure Violation*

Aparicio argues insufficient evidence supports the trial court's conclusion he failed to submit to search and seizure.[6] Not so.

"'[S]ection 1203.2 provides the court may revoke probation if it has reason to believe that the person has violated any of the probation conditions.'" (*McGavock*, *supra*, 69 Cal.App.4th at p. 337.) "'When the evidence shows that a defendant has not complied with the terms of probation, the order of probation may be revoked at any time during the probationary period. [Citations.]' [Citation.]" (*People v. Johnson* (1993) 20 Cal.App.4th 106, 110.) The evidence must prove a willful violation of a probation condition. (*Zaring*, *supra*, 8 Cal.App.4th at p. 379.) On appeal, we must of course "view the facts in the light most favorable to the judgment, drawing all reasonable inferences in its support. [Citations.]" (*People v. Cochran* (2002) 103 Cal.App.4th 8, 13.)

Here, there was sufficient evidence from which the trial court could reasonably conclude by a preponderance of the evidence Aparicio failed to submit to search and seizure. When Sontag arrived at the house the third time, he wore his department issued uniform. Sontag testified he called out to Aparicio three or four times. Sontag stated that when he called out to Aparicio from 20 to 30 feet[7] away the second or third time, Aparicio looked at him, but then walked in the opposite direction, toward the

---

6  Although violating a law is sufficient reason to revoke Aparicio's probation under 1203.2, subdivision (a), a point Aparicio does not dispute, we will address the search and seizure issue.

7  In his opening brief, Aparicio claims Sontag was 20 to 30 *yards* away from him. The page of the reporter's transcript he cites to in support of this claim, indicates Sontag was 20 to 30 *feet* away from him, not *yards*.

11

backyard. After Sontag repeated his commands to no avail, he quickened his approach, struck Aparicio, and arrested him.

Although the trial court recognized Sontag may have some credibility issues because of the excessive force complaints, the court opined those complaints did not diminish his credibility on the issues before the court. Additionally, Reyes testified she was "steps away" from Aparicio when she heard Sontag's instructions to "open the gate and walk towards him." (*People v. Richardson* (2008) 43 Cal.4th 959, 1030-1031 ["testimony of a single witness is sufficient for the proof of any fact"].) Although Aparicio testified he never heard Sontag tell him to stop or call out his name and he did not realize Sontag was a police officer, the court found Aparicio not credible and did not believe his testimony.

Upon review of the record, we find there is substantial evidence to support the trial court's finding Aparicio did not submit to search and seizure. Therefore, the trial court properly revoked probation and executed the suspended sentence of 16 years.

*Credit Recalculation*

Aparicio contends the abstract of judgment incorrectly reflects the credits the court awarded him. The Attorney General agrees, but asserts he is entitled to four more days than Aparicio claims he is due. We agree with the Attorney General.

A defendant is entitled to actual custody credit for "all days of custody" in county jail and residential treatment facilities, including partial days. (§ 2900.5, subd. (a); *People v. Smith* (1989) 211 Cal.App.3d 523, 526.) Calculation of custody credit begins on the day of arrest and continues through the day of sentencing. (*People v. Bravo* (1990) 219 Cal.App.3d 729, 735.) A defendant is also entitled to conduct credits under section 4019. However, section 2933.1, subdivision (a), states, "Notwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of [s]ection 667.5 shall accrue no more than 15 percent of worktime credit, as defined in

12

[s]ection 2933." Here, Aparicio's underlying offense, attempted murder, is listed under section 667.5, subdivision (c)(12). Thus, the 15 percent credit limitation applies.

After his guilty plea but before probation, Aparicio received actual credit for 330 days served in county jail and 49 conduct credit days. After his arrest for the probation violations, Aparicio served 260 actual days while waiting for his probation revocation hearing; applying the 15 percent credit limitation, he should receive 39 conduct credit days for this time. Based upon this re-calculation, Aparicio has 590 actual days served and 88 conduct credit days, totaling 678 days.

## DISPOSITION

We affirm the order revoking probation and modify the judgment as follows: Aparicio is entitled to 590 days of actual credit and 88 days of conduct credit for a total of 678 days credit. The clerk of the superior court is directed to prepare an amended abstract of judgment consistent with this opinion and forward it to the Department of Corrections and Rehabilitation, Division of Adult Operations. As modified, the judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.

13